**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **Civil No.** |
| : | |
| **LESTER BURROUGHS,** : | |
| : | **JURY TRIAL DEMANDED** |
| : | |
| **Defendant.** : | |

**COMPLAINT**

Plaintiff, the United States Securities and Exchange Commission (the "Commission"), alleges the following against defendant Lester Burroughs ("Burroughs" or "Defendant") and hereby demands a jury trial:

**PRELIMINARY STATEMENT**

1.        This is a securities fraud enforcement action.  Burroughs, an investment adviser representative and broker-dealer registered representative, engaged in a scheme to defraud retail investors from at least November 2012 to at least January 2019.   Burroughs misappropriated advisory client money for his own personal use, created and sold fictitious investment products to clients, and engaged in a Ponzi-like scheme by paying back some advisory clients with money stolen from other advisory clients.   Burroughs defrauded at least five clients and has failed to return at least $560,000 to three of his clients.

2.     As a result of the conduct alleged herein, Burroughs violated or in the alternative aided and abetted violation of, and unless restrained and enjoined will continue to violate, Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act").

3.     The Commission seeks a permanent injunction enjoining Burroughs from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful conduct set forth herein together with prejudgment interest, civil penalties, and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to Sections 209(d), 209(e) and 214 of the Advisers [15 U.S.C. §§ 80b-9(d), 80b-9(e) and 80b-14].

5.     Venue is proper in the District of Connecticut pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because the certain of the conduct alleged in this complaint occurred within the District of Connecticut and because Burroughs both resides in and transacted business in Connecticut.

6.     In connection with the conduct alleged in this Complaint, the Defendant, directly or indirectly, made use of the means or instrumentalities of, interstate commerce or the mails, in connection with the transactions, acts, practices, and courses of business alleged in the Complaint.

## DEFENDANT

7.     Lester Burroughs, age 60, is resident of Torrington, Connecticut.  From September 2012 to the present, Burroughs has been a registered representative and investment adviser representative of Lincoln Investment Planning, LLC ("Lincoln Investment"), which is headquartered in Fort Washington, Pennsylvania, and has been registered with the Commission

as a broker-dealer since 1969 and as an investment adviser since 1978.  From March 2014 to the

present, Burroughs also has been an investment adviser representative of Capital Analysts

("Capital Analysts"), LLC, also headquartered in Fort Washington, Pennsylvania, and which has

been registered with the Commission as an investment adviser since 2012.

## STATEMENT OF FACTS

8.      Beginning in at least November 2012, Burroughs misappropriated money from

advisory clients and used the money for his own personal purposes, and also engaged in a Ponzi-

like scheme to cover-up the misappropriations by paying some clients back with money stolen

from other clients.

9.      Part of Burroughs' scheme involved the sale to certain advisory clients of a

product that Burroughs described to them as a "Guaranteed Interest Contract" or "GIC."

Burroughs told clients that the GICs he was selling paid a return of 4% or 7% per year for the life

of the contract.  Burroughs, however, never invested his clients' money in GICs.  Instead, he

misappropriated his clients' money, and provided his clients with fake documents to cover up

what he had done.

10.      Between at least 2012 and 2017, Burroughs sold the initial victim, an elderly

client hereafter referred to as Client A, four separate fictitious GICs totaling approximately

$370,000.  Bank records show that Burroughs misappropriated Client A's money and used it for

part of a payment to another client, insurance policy payments for other clients, Burroughs'

personal expenses, and small "interest" payments back to Client A.

11.      In the summer of 2018, when a relative of Client A began to ask Burroughs to

explain these investments, Burroughs created a fake statement from a well-known insurance

company and sent it to the relative.  The statement was for the period July 15, 2017 through July

15, 2018 and showed Client A had a GIC that paid 4% interest and was worth $152,081.61.
When Burroughs was pressed by Client A's relative to return the invested money, Burroughs
convinced three other of his investment advisory clients (referred to hereafter as Clients B, C,
and D) to invest in fictitious GICs that paid 4% to 7% so that he could obtain money to pay back
Client A.  From June 2017 to December 2018, Burroughs convinced these three other clients to
invest approximately $560,000 in GICs, some of which he used to repay Client A.  Burroughs
used this money to pay Client A approximately $445,000, which reflected Client A's principal
invested in the fictitious GICs plus 4% annual interest.

12.     In May 2014, Client B, now age 83, began opening various accounts with Lincoln
Investment that were advised by Burroughs.  In September 2018, Burroughs convinced Client B
to invest in a purported GIC.  On September 4, 2018 Burroughs deposited $70,000 from Client B
into a bank account controlled by Burroughs, and, on November 28, 2018, Burroughs deposited
another $50,000 from Client B into a bank account controlled by Burroughs.  Burroughs used
this money from Client B for purposes other than purchasing a GIC for client B, including for
personal purposes and to partially pay back Client A, resulting in total misappropriation of
approximately $120,000 from Client B.

13.     In May 2014, Client C opened an individual retirement account for which
Burroughs provided investment advice through Capital Analysts.  The money from the account
was funded by Client C's retirement savings plan as Client C was planning to retire in about two
years.  In August 2018, Burroughs convinced Client C to transfer $50,000 from Client C's bank
account to Burroughs to invest in a purported two year GIC paying 4% per year, with the
principal and interest to be returned in August 2020.   On August 14, 2018, Burroughs deposited
$50,000 from Client C into a bank account controlled by Burroughs.  Burroughs used this money

4

from Client C for purposes other than purchasing a GIC for client C, including for personal purposes and to partially pay back Client A.  Later, Burroughs provided Client C with a fake account statement reflecting his investment in a GIC to hide his misappropriation of approximately $50,000 from Client C.

14.    In July 2014, Client D, opened an advisory account with Lincoln Investment that was advised by Burroughs.  Burroughs convinced Client D to invest in purported GICs beginning in June 2017.  Burroughs deposited a total of $405,000 from Client D into one or more bank accounts controlled by Burroughs: (1) $50,000 on June 7, 2017; (2) $25,000 on August 15, 2017; (3) $30,000 on January 31, 2018; and (4) $300,000 on December 27, 2018.

15.    Client D's $300,000 check from December 27, 2018 funded, at least in large part, the nearly $300,000 of payments Burroughs made to Client A on January 7, 2019.  In addition, a portion of Client B's September 4, 2018 $70,000 check and a portion of Client C's August 14, 2018 $50,000 check also funded, at least in part, an approximately $89,000 payment Burroughs made to Client A on November 6, 2018.  Burroughs also made a payment of $15,000 to Client D in December 2018 shortly before the $300,000 misappropriation, resulting in a net misappropriation of approximately $390,000 from Client D.

## FIRST CLAIM FOR RELIEF
### (Violations of Sections 206(1) and 206(2) of the Advisers Act)

16.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 15 of this Complaint.

17.    By engaging in the conduct described above, Defendant, while acting as an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C §80b-2(a)(11)], by use of the means of and instrumentalities of interstate commerce or the mails, directly or indirectly:

(a) employed devices, schemes, or artifices to defraud clients; and

(b) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon clients.

18.     By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated, and unless enjoined, will continue to violate Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## SECOND CLAIM FOR RELIEF

### (Aiding and Abetting Lincoln Investment's and Capital Analysts' Violations of Sections 206(1) and 206(2) of the Advisers Act)

19.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 15 of this Complaint.

20.     At all relevant times, Lincoln Investment and Capital Analysts were both an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C §80b-2(a)(11)].

21.     By engaging in the conduct set forth above, Lincoln Investment and Capital Analysts, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting intentionally, knowingly, recklessly, or negligently:  (a) has employed or is employing devices, schemes, or artifices to defraud; or (b) has engaged or is engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon a client or prospective client, in violation of Sections 206(1) and 206 (2) of the Advisers Act [15 U.S.C. §80b-6(1) & (2)].

22.     By engaging in the conduct set forth above, Defendant knowingly or recklessly provided substantial assistance to Lincoln Investment in its violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §80b-6(1) & (2)].

23.     By engaging in the conduct set forth above, Defendant knowingly or recklessly provided substantial assistance to Capital Analysts in its violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §80b-6(1) & (2)].

24.     As a result, Defendant aided and abetted, and unless enjoined, will continue to aid and abet Lincoln Investment's and Capital Analysts' violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §80b-6(1) & (2)], and is liable under those sections pursuant to Section 209(f) of the Advisers Act [15 U.S.C. §80b-9(f)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court grant the following relief:

A.      Enter a permanent injunction, including an injunction restraining Defendant and each of his agents, servants, employees and attorneys and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §80b-6(1) & (2)].

B.      Require Defendant to disgorge his ill-gotten gains and losses avoided, plus pre-judgment interest, with said monies to be distributed in accordance with a plan of distribution to be ordered by the Court;

C.      Require Defendant to pay an appropriate civil monetary penalty pursuant to Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)];

D.      Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and,

7

E.      Award such other and further relief as the Court deems just and

proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a

jury trial in this action of all issues so triable under the claims in this Complaint.

Respectfully submitted,

/s/ Martin F. Healey
Martin F. Healey (Mass. Bar No. 227550)
Robert Baker (Mass. Bar No. 654023)
Lawrence Pisto (Mass. Bar No. 555317)
Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-8952 (Healey direct)
(617) 573-4590 (fax)
healey@sec.gov (Healey email)

*Local Counsel*:
John B. Hughes (Fed. Bar No. CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 25th Floor
New Haven, CT  06510
(203) 821-3700 (203)
773-5373 (fax)

Dated:  December 4, 2019